# In re Anonymous Nos. 61 D.B. 85 & 62 D.B. 81

Disciplinary Board Docket no. 61 D.B. 85 and 62 D.B. 81.

To the Honorable Chief Justice and Justices of the Supreme Court of Pennsylvania:

KELLER, *Member,* March 27, 1989—Pursuant to Rule 218(c)(5) of the Pennsylvania Rules of Disciplinary Enforcement, the Disciplinary Board of the Supreme Court of Pennsylvania herewith submits its findings and recommendations to your honorable court with respect to these combined petition for reinstatement and petition for discipline.

## HISTORY OF PROCEEDINGS

This matter arises out of petitioner's petition for discipline and respondent's petition for reinstatement arising from respondent's criminal convictions.

A petition for discipline was filed against respondent on May 6, 1986. The petition contained two

charges each alleging various criminal matters involving respondent.

Charge I states that respondent was indicted by the grand jury on March 1, 1984, in the U.S. District Court for the [ ] District of Pennsylvania on one count of violation of 42 U.S.C. §1396h(b)(1)(B), receipt of remuneration for ordering of laboratory services out of his operation of a medical center. Respondent changed his plea from not guilty to guilty on October 3, 1984. On November 20, 1984, respondent was sentenced by the Honorable [A], U.S. District Judge, who suspended the imposition of sentence and placed respondent on three-years probation under three conditions: (1) that defendant abide by all local, state and federal laws; (2) that defendant abide by the rules and regulations of the probation department; (3) that defendant serve a period of volunteer service of 120 days with the [B] in [ ], on such a schedule as the probation department may determine will fit in with defendant's other responsibilities.

On February 15, 1985, Judge [A] entered an order modifying the sentence by replacing the third condition of probation with the following: (3) that defendant perform community legal service at the [C] Legal Aid Society for 120 days on such schedule as the probation department may determine will fit in with defendant's other responsibilities, and provided defendant shall be neither asked nor permitted to engage in any activities which would constitute the practice of law until such time as he has been readmitted to the practice of law in the Commonwealth of Pennsylvania.

The petition averred that by this conduct respondent violated the following rules:

(1) D.R. 1-102(A)(3), which prohibits illegal conduct that involves moral turpitude;

(2) D.R. 1-102(A)(4), which prohibits conduct involving dishonesty, fraud, deceit, or misrepresentation; and

. (3) D.R. 1-102(A)(6), which prohibits conduct that adversely reflects on the attorney's fitness to practice law.

The second charge sets forth various criminal charges brought against respondent by the attorney general of Pennsylvania and the [   ] district attorney under February Term 1983. The charges were alleged in bill nos. [1] through [6] and consisted of the following:

Bill no. [1]: Medicaid fraud in violation of 62 Pa.C.S. §1407(a)(1), (4), (7), (9), (12).

Bill no. [2]: Fraudulent recordkeeping in violation of 18 Pa.C.S. §4911.

Bill no. [3]: Unlawful practice of medicine in violation of 63 Pa.C.S. §421-3 and 18 Pa.C.S. §306.

Bill no. [4]: Theft by deception in violation of 18 Pa.C.S. §3922.

Bill no. [5]: Execution of documents by deception in violation of 18 Pa.C.S. §4114.

Bill no. [6]: Criminal conspiracy in violation of 18 Pa.C.S. §903.

The petition further averred that on October 5, 1984, respondent changed his previously entered pleas of not guilty to the foregoing offenses to guilty pleas. Respondent was sentenced on February 14, 1985, by the Honorable [D], [   ] Court of Common Pleas, as follows: Bill no. [1], seven-years probation; bill nos. [2], [4] and [6], seven-years probation on each bill, to run concurrently with probation of bill no. [1]; bill no. [3], one-year probation, consecutive to probation on bill nos. [1], [2], [4] and [6]; bill no. [5], two-years probation to run consecutively to probation on bill no. [3].

On March 4, 1984, Judge [D] entered an order terminating respondent's state court probation in consideration of an agreement between respondent and the Pennsylvania Department of Public Welfare relating to their respective financial claims and obligations. Finally the petition averred that respondent's conduct violated D.R. 1-102(A)(3), D.R. 1-102(A)(4) and D.R. 1-102(A)(6).

By order dated July 30, 1985, the Supreme Court of Pennsylvania referred the matter to the Disciplinary Board for the purpose of holding a hearing pursuant to Rule 214(f), Pa.R.D.E. to determine whether any discipline should or should not be imposed.

Pursuant to respondent's completion of probation and conditions of sentence, on February 10, 1988, respondent filed a petition for reinstatement from his one-year suspension. On February 16, 1988, respondent's petition for reinstatement, and disciplinary counsel's petition for discipline, no. 61 D.B. 85, were referred to Hearing Committee [ ] consisting of [ ].

## FINDINGS OF FACT

(1) [Respondent] was born in [ ] on May 9, 1941.

(2) Respondent was admitted to the bar of the Supreme Court of Pennsylvania on October 1, 1973.

(3) On November 10, 1981, a petition for discipline was filed against respondent.

(4) The petition set forth several charges of professional misconduct in violation of the Code of Professional Responsibility on the basis of respondent's representation of two clients.

(5) The Disciplinary Rules of the Code of Professional Responsibility alleged to have been violated by respondent were:

(a) D.R. 1-102(A)(4), concerning conduct involving dishonesty, fraud, deceit or misrepresentation;

(b) D.R. 6-101(A)(3), concerning neglecting a legal matter entrusted to an attorney;

(c) D.R. 7-101(A)(1), concerning an attorney's intentional failure to seek the lawful objectives of a client; and

(d) D.R. 9-102(B)(4), concerning the requirement that a lawyer promptly deliver to a client upon request all properties in the possession of the lawyer to which the client is entitled.

(6) The petition for discipline was served on respondent, who filed an answer.

(7) Hearings were held before a hearing committee of the Disciplinary Board on March 23, 1982, and March 24, 1982.

(8) Respondent was represented by [E], Esq., at both hearings.

(9) At the hearing held on March 23, 1982, Dr. [F], a former client of respondent, testified that respondent "said that he would return the papers (to which Dr. [F] was entitled) after the complaint with the board was dropped."

(10) Pursuant to section 89.171 et seq. of the Disciplinary Board Rules, on February 10, 1983, the hearing committee filed a report with the secretary to the Disciplinary Board.

(11) The hearing committee which heard the evidence found as a fact that, "respondent promised to return his [Dr. F's] papers only after the complaint was dropped."

(12) The hearing committee found that respondent "intentionally misrepresented" to a client that he had submitted a pension plan to the Internal Revenue Service for approval.

(13) Upon review pursuant to section 89.201 et seq. of the Disciplinary Board Rules, the Disciplinary Board filed a report in which it concluded that respondent conditioned the return of Dr. [F's] documents on the withdrawal of the disciplinary complaint.

(14) The Disciplinary Board concluded that respondent's misconduct included "repeated negligence and misrepresentations to his clients."

(15) Pursuant to Rule 208(e), Pa.R.D.E., the board transmitted its report and recommendation to the Supreme Court of Pennsylvania which, by order dated May 27, 1983, suspended respondent for a period of one year. *In re Anonymous No. 61 D.B. 81,* 27 D.&C. 3d 148, 155 (1983).

(16) On March 1, 1984, an indictment was issued by a grand jury sitting in the U.S. District Court for the [  ] District of Pennsylvania and captioned: *United States of America v. [Respondent],* Criminal Action no. [  ].

(17) The indictment charged that respondent violated 42 U.S.C. §1396h(b)(1)(B), receipt of remuneration for ordering of laboratory services, in that he:

"[D]id knowingly and willfully solicit and receive from [G] remuneration in the form of cash rebates and kickbacks of approximately 10 percent of the amount of bills submitted to the Medicaid program for clinical laboratory work done by [G] on behalf of Medicaid patients of the defendant which services were arranged for and ordered from [G] by the defendant in return for such remuneration, and for

which services payment may have been and was made in whole or in part from federal funds under the Medicaid program of the Commonwealth of Pennsylvania. . . ."

(18) It was alleged that the remuneration totalled in excess of $15,000.

(19) In February 1983, following a preliminary hearing on February 17, 1983, informations were issued by the attorney general of the Commonwealth of Pennsylvania and the district attorney of [ ]. Those informations were captioned at *Commonwealth v. [Respondent],* Court of Common Pleas of [ ] County, Trial Division—Criminal Branch, February term, 1983, nos. [1-6].

(20) Those informations charged respondent with the following criminal violations:

(a) Medicaid fraud in violation of 62 Pa.C.S. §1407(a)(1), (4), (7), (9) and (12);

(b) Tampering with public records or information with intent to defraud in violation of 18 Pa.C.S. §4911;

(c) Unlawful practice of medicine without a license in violation of the Medical Practice Act in violation of 63 Pa.C.S. §421.3;

(d) Theft by deception in violation of 18 Pa.C.S. §3922;

(e) Securing execution of documents by deception in violation of 18 Pa.C.S. §4114; and

(f) Criminal conspiracy in violation of 18 Pa.C.S. §903.

(21) On October 3, 1984, respondent appeared before the Honorable [A], Judge, U.S. District

Court, [ ] District of Pennsylvania and entered a plea of guilty.

(22) While under oath, respondent admitted his guilt to receipt of remuneration for ordering of laboratory services in violation of Title 42, U.S. Code, §1396h(b)(1)(B).

(23) On October 5, 1984, respondent appeared before the Honorable [D], Judge, Court of Common Pleas, [ ] County.

(24) Respondent, under oath, admitted his guilt of each of the allegations contained in the informations.

(25) On November 20, 1984, respondent appeared before Judge [A] who sentenced him to a period of three-years probation conditioned on his abiding by all local, state and federal laws as well as the rules and regulations of the Probation Department. As a further condition, respondent was to perform 120 days of volunteer service work.

(26) On February 14, 1985, respondent appeared before Judge [D] who sentenced him to a period of probation totalling 10 years.

(27) By order dated July 30, 1985, the Supreme Court of Pennsylvania referred the matters of respondent's convictions in the U.S. District Court and the Court of Common Pleas of [ ] County to the Disciplinary Board for the purpose of holding a hearing pursuant to Rule 214(f), Pa.R.D.E., for the sole purpose of determining the discipline to be imposed.

(28) Respondent has completed his periods of probation and conditions of sentence in both the federal and state criminal matters.

(29) Respondent has provided evidence of having completed the areas of study designated in section 89.279 of the Disciplinary Board Rules as evidencing learning in the law.

(30) On February 10, 1988, respondent filed a petition for reinstatement in the Office of the Secretary to the Disciplinary Board seeking reinstatement from his one-year suspension.

(31) On February 16, 1988, the petition for reinstatement was referred to Hearing Committee [    ] for disposition, and was joined with the petition for discipline at no. 61 D.B. 85 pursuant to Pa.R.D.E. 218(c)(2) and section 89.273(a)(2) of the Disciplinary Board Rules.

## DISCUSSION

### *Petition for Discipline*

The Disciplinary Board's determinations of this matter are based on a balancing of respondent's criminal misconduct against several mitigating factors. These factors include respondent's lengthy suspension served to date, credible testimony relating to respondent's competency and professional integrity, and respondent's active participation in public service.

Rules 201(b)(1) and 204(a), Pa.R.D.E., provide that criminal misconduct shall be grounds for discipline, including suspension for up to five years and disbarment. Under normal circumstances misconduct as severe as respondent's would constitute reasonable grounds for disbarment. However, the mitigating circumstances in respondent's case com-

pel us to accept the Hearing Committee's recommendation of a five-year suspension, retroactive to July 30, 1985, less one year for prior suspension served.

The primary function of the disciplinary system is to determine the fitness of an attorney to continue the practice of law. *Office of Disciplinary Counsel v. Lucarini*, 504 Pa. 271, 472 A.2d 186 (1983). Thus, the imposition of disciplinary sanctions serves to protect the public from unfit lawyers and is not designed to be punitive. *Office of Disciplinary Counsel v. Kanuck*, 517 Pa. 160, 535 A.2d 69, 74 (1987); *In re Berlant*, 458 Pa. 439, 328 A.2d 471 (1974). In *Kanuck*, the Supreme Court further stressed that "[t]he power of the court to disbar an attorney should be exercised with great caution." *Id.*, citing *Office of Disciplinary Counsel v. Knepp*, 497 Pa. 396, 441 A.2d 1197 (1982); *Davis' Case*, 93 Pa. 116 (___).

The Disciplinary Board has unanimously concluded that the imposition of retroactive suspension would be a reasonable disciplinary sanction. Although the board fully acknowledges the severity of respondent's misconduct, we find that in consideration of respondent's mitigating circumstances, disbarment would be a punitive sanction. Moreover, the testimony in this matter clearly illustrates that disbarment of respondent would be unnecessary to protect the interests of the public as well as the integrity of the legal profession.

Respondent has not practiced law in the Commonwealth of Pennsylvania since May 27, 1983, yet he could have been reinstated as early as May 27, 1984.

This board further finds that respondent served his probation in exemplary fashion. He completed his mandated volunteer service work with [C] Legal

Aid Society and has continued to work pro bono [    ]
to date. The executive director of [C], [H], testified
that he himself would be comfortable seeking legal
advice from respondent. Additionally, other credi-
ble witnesses testified that respondent would neither
be a detriment to the integrity of the bar nor to the
public interest.

The board affirms the hearing committee's recom-
mendation of a five-year suspension retroactive to
July 30, 1985, less one year for suspension previ-
ously served. When disbarment is an unwarranted
disciplinary sanction, the Supreme Court has often
imposed retroactive suspension. See *Kanuck,* 517
Pa. 160, 535 A.2d 69 (1987) (five-year retroactive
suspension); *Office of Disciplinary Counsel v. John-
son,* 504 Pa. 346, 473 A.2d 1014 (1984) (two-year
retroactive suspension); *Office of Disciplinary
Counsel v. Duffield,* 498 Pa. 357, 446 A.2d 598 (1982)
(five-year retroactive suspension); *Office of Disci-
plinary Counsel v. Eilberg,* 497 Pa. 388, 441 A.2d
1193 (1982) (five-year retroactive suspension).

In reviewing this matter the Disciplinary Board
has given serious consideration of respondent's
criminal misconduct. However, when weighed
against respondent's mitigating circumstances, his
misconduct does not warrant disbarment. In light of
respondent's continued public service, favorable
testimony regarding his professional integrity and
competency, his lengthy suspension served to date,
and the delay in starting proceedings against him,
the board agrees with the hearing committee's find-
ing that disbarment would be an improper sanction.
Accordingly, this board unanimously recommends a
five-year retroactive suspension, less one year for
suspension served.

## Reinstatement

The Disciplinary Board has unanimously agreed that respondent's petition for reinstatement be granted effective July 30, 1989. The standard for determining whether a formerly admitted attorney should be reinstated is set forth in Rule 218(c)(3)(i) of the Pennsylvania Rules of Disciplinary Enforcement:

"A disbarred or suspended attorney shall have the burden of demonstrating by clear and convincing evidence that such person has the moral qualifications, competency and learning in law required for admission to practice law in this Commonwealth and that the resumption of the practice of law within the Commonwealth by such person will be neither detrimental to the integrity and standing of the bar or the administration of justice nor subversive of the public interest."

The testimony of respondent and his witnesses demonstrates that respondent is adequately prepared for reinstatement.

The Supreme Court has stated that "the main thrust of the [reinstatement] proceeding is whether the disciplined attorney is *now* morally fit and technically competent to engage in the practice of law." *Philadelphia Newspapers Inc. v. Disciplinary Board,* 468 Pa. 384, 386 n.6, 363 A.2d 779, 781 n.6 (1976). (emphasis added) Similarly, this board has stressed that "[i]n determining whether reinstatement is warranted . . . we must consider . . . petitioner's *present* qualifications and competence in legal skills . . . ." *In re Anonymous No. 12 D.B. 73 and 12 D.B. 74,* 30 D.&C. 3d 352, 359 (1984). (emphasis added)

The testimony of respondent and his witnesses regarding his competency, legal skills and moral qualifications while serving the [C] Legal Aid Society was both credible and highly favorable. The

record clearly demonstrates that respondent is adequately prepared to resume the practice of law in the Commonwealth of Pennsylvania.

## CONCLUSIONS OF LAW

### Petition for Discipline

(1) Pursuant to Rules 203(b)(1) and 204(a) of the Pennsylvania Rules of Disciplinary Enforcement, criminal misconduct shall be grounds for discipline including suspension for up to five years and disbarment.

(2) The Disciplinary Board unanimously concludes that respondent's mitigating circumstances warrant a five-year retroactive suspension.

(3) Respondent should be suspended from the practice of law for five years, retroactive to the date on which Disciplinary Counsel could have begun disciplinary proceedings, July 30, 1985, less one year for suspension served prior to that date.

### Petition for Reinstatement

(1) Respondent has demonstrated by clear and convincing evidence that he:

(a) Has the moral qualifications, competency and learning in the law required for admission to practice law in this Commonwealth; and

(b) Respondent's resumption of the practice of law within the Commonwealth will not be detrimental to the integrity and standing of the bar or the administration of justice nor subversive of the public interest.

## RECOMMENDATION

The Disciplinary Board recommends to the Supreme Court as follows:

(1) Respondent, [　], be suspended from the practice of law for five years retroactive to July 30, 1985, less one year for suspension served.

(2) Respondent, [　], be readmitted to the practice of law in the Commonwealth on July 30, 1989.

(3) Respondent be directed to pay the necessary expenses incurred by the board in the investigation and prosecution of these proceedings, pursuant to Rules 208(g) and 218(e), Pa.R.D.E.

Messrs. Schwartzman and Tumolo did not participate in the adjudication.

## ORDER

And now, April 30, 1991, the rule to show cause entered in the above matter on March 30, 1990, is discharged. The recommendation of the Disciplinary Board dated March 27, 1989, is accepted, and it is hereby ordered as follows:

(1) Respondent is suspended from the practice of law for a period of five years retroactive to July 30, 1985, less one year for suspension served;

(2) The petition for reinstatement is granted, effective immediately; and

(3) Pursuant to Rules 208(g) and 218(e), Pa.R.D.E., [respondent] is directed to pay the expenses incurred by the Board in the investigation, prosecution and processing of these proceedings.

Mr. Chief Justice Nix did not participate in the consideration or decision of this case.